IN THE UNITED STATES DISTRICT COURT
WESTERN DISRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ISMAEL LOBOS                                                                    PLAINTIFF

V.                                        NO. 15-5007

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                       DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Ismael Lobos, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

I.       **Procedural Background:**

Plaintiff filed his application for DIB on December 14, 2011, alleging disability since November 3, 2011, due to osteoarthritis, heart disease, diabetes, high blood pressure, morbid obesity, lung disorder, hemorrhoids, vision problems, hearing problems, and prostate problems. (Tr. 58, 123-129, 158, 161). An administrative hearing was held on April 29, 2013, at which Plaintiff appeared with counsel and testified. (Tr. 38-57).

By written decision dated August 2, 2013, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – diabetes mellitus and hypertension. (Tr. 24). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart

1

P, Regulation No. 4. (Tr. 25). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). (Tr. 25).With the help of a vocational expert (VE), the ALJ determined Plaintiff was capable of performing his past relevant work as a poultry deboner. (Tr. 25).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on November 4, 2014. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed briefs, Plaintiff has filed a reply brief, and this case is before the undersigned for report and recommendation. (Docs. 18-20).

**II.    Evidence Presented:**

The records reflect that Plaintiff was born in 1953, went to school for one day, and is unable to speak or read English. (Tr. 158, 169). An interpreter was provided at the hearing that was held before the ALJ. (Tr. 38-57).  Medical records dating from 2003 to November 3, 2011, the alleged onset date, reflect that Plaintiff was treated for various conditions during this period of time, such as headaches, high blood pressure, chest pain, abdominal pain, abnormal blood sugar, benign prostatic hyperplasia, obesity, osteoarthritis, malaise, cataracts, constipation, possible sleep disorder, myalgias and arthralgias, mild hearing loss in high frequencies for the left ear, dizziness, urinary frequency, hemorrhoids, and bronchitis. (Tr. 235, 254, 256, 261, 340-343, 349-354, 356-357, 369, 465, 470, 478, 508-525, 526-538).

By notice dated November 3, 2011, on Plaintiff's alleged onset date, Plaintiff's former employer, Cargill Meat Solutions, completed a "Performance Correction Notice" wherein Plaintiff was terminated as a gizzard cutter because of Performance Lapse. (Tr. 236). It was reported that Plaintiff's performance did not meet the expectations of the gizzard

cutter position. Plaintiff had received three prior warnings, noting deficiencies with Plaintiff's technique and the rate of gizzards being harvested. (Tr. 236).

Subsequent to the onset date (November 3, 2011), on November 18, 2011, Plaintiff presented himself to Dr. Christopher Johnson, complaining of elevation of his blood pressure and cough and congestion. (Tr. 343). Plaintiff was assessed with unspecified essential hypertension and acute bronchitis. (Tr. 344).  On December 2, 2011, Plaintiff presented himself to Dr. Ruben Tejada, of NWA Internal Medicine Clinic, complaining of lower back pain, sore throat, and gastroesophageal reflux. (Tr. 359). Plaintiff was placed on Mobic and Nexium, and his blood pressure was to continue to be monitored. (Tr. 359).  Plaintiff was diagnosed with osteoarthrosis unsp. site; diabetes uncompl. Type II; benign hypertension; malaise/fatigue; morbid obesity; esophageal reflux; and headache. (Tr. 360). Plaintiff was again seen by Dr. Tejada on February 10, 2012, complaining of abdominal pain, headache, blisters on his head and scalp, and knee pain. (Tr. 362). Dr. Tejada recommended light exercise to Plaintiff and advised him to be on a 1500 calorie diet. (Tr. 367).

On February 20, 2012, Plaintiff presented himself to Dr. Ornette Gaines, at the St. Francis Community Clinic, complaining of high blood pressure, blisters on his head, dizziness, and a headache. (Tr. 396). Plaintiff reported that his blood pressure was better controlled by Lisinopril-HCTZ. (Tr. 396). Dr. Gaines assessed Plaintiff with HTN (hypertension), depressive disorder, nos, overweight, GERD, and constipation, nos. (Tr. 396).

On February 27, 2012, Plaintiff went to the Mercy Hospital Emergency Room (ER), with a complaint of high blood sugar. (Tr. 285). It was noted that Plaintiff had normal range of motion, normal strength, and normal reflexes in his musculoskeletal examination. (Tr.

287). While in the ER, his blood pressure and blood sugar came down, and Plaintiff was diagnosed with unspecified essential hypertension, hyperglycemia, and hypokalemia. (Tr. 289). Plaintiff presented to Dr. Gaines for follow-up on February 29, 2012, and reported he was told he had diabetes, and was not on any medication for his diabetes. (Tr. 394). Dr. Gaines assessed Plaintiff with diabetes mellitus type II and headache, and started Plaintiff on Metformin HCI. (Tr. 394). Plaintiff was again seen by Dr. Gaines on March 9, 2012, where it was reported that his blood sugars had run in the low 100s in the AM and 150s in the PM, and that Plaintiff had small bumps on his scalp. (Tr. 392). Plaintiff was assessed with diabetes mellitus type II and folliculitis barbae. (Tr. 392). On April 25, 2012, Plaintiff appeared at the ER, complaining of head pain and numbness in his left arm, and was diagnosed with head pain and shingles. (Tr. 419).

On May 23, 2012, a Mental Diagnostic Evaluation was performed by Stephen P. Nichols, Ph.D., a clinical psychologist, who was asked by Disability Services to evaluate Plaintiff. (Tr. 324). An interpreter was provided. (Tr. 324). Plaintiff reported that his memory "won't turn on" and that he had headaches. (Tr. 324). He denied any emotional symptoms such as anxiety or depression, and reported he had never seen a psychiatrist. However, he was then taking Prozac, which had reportedly been prescribed. (Tr. 324). Dr. Nichols reported that Plaintiff was born in El Salvador, attended elementary school and went to work at a very young age. He moved to the United States when he was 37 years old, and immediately went to work in the poultry field. (Tr. 324). Dr. Nichols reported that Plaintiff was a construction worker for nine years before going to work for Cargill Corporation, processing turkeys. (Tr. 324). Plaintiff told Dr. Nichols that he stayed near his home most of the day and liked to take walks. (Tr. 325). Dr. Nichols found Plaintiff to be a very poor

4

historian, and that his thought processes were often illogical and disconnected, noting that part of the problem may have been that he was responding to his questions through an interpreter and may not have fully understood the questions. (Tr. 325). Dr. Nichols found Plaintiff's fund of information was very poor and that he was functioning well below average from a cognitive standpoint. (Tr. 326). However, he also noted that Plaintiff had been successfully married, raised two children, and performed gainful employment for many years, both in El Salvador and the United States. (tr. 326). Dr. Nichols diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | Cognitive Disorder, NOS |
| Axis II: | Possible borderline intellectual functioning |
| Axis III: | Numerous health problems |
| Axis IV: | Unemployment |
| Axis V: | GAF – 40 |

(Tr. 326). Dr. Nichols found that Plaintiff was able to perform many activities of daily living, but that his ability to communicate and interact in a socially adequate and intelligible manner were "both impaired by his serious cognitive deficiencies." (Tr. 326). He also found Plaintiff's ability to function with supervisors and coworkers would be equally affected, and that his ability to cope with, concentrate on, and sustain persistence in completing tasks would be impaired by his low intelligence and poor memory. (Tr. 326).

On May 31, 2012, non-examining consultant, Cheryl Woodson-Johnson, Psy.D., completed a Mental RFC Assessment, finding Plaintiff's condition was not clear with regard to etiology, and noting that he had a good history of engaging in work related activities, and was able to function independently at home. (Tr. 306). She further noted that Plaintiff helped to care for his disabled wife, and that although Plaintiff was possibly borderline in his intellectual capacity, the medical evidence did not suggest he would be unable to engage in

his former occupational activity level. (Tr. 306). Dr. Woodson-Johnson also completed a Psychiatric Review Technique form on the same date, and concluded that Plaintiff had a mild degree of limitation in activities of daily living and in maintaining social functioning, had a moderate degree of limitation in maintaining concentration, persistence, or pace, and had no episodes of decompensation, each of extended duration. (Tr. 317).

On June 8, 2012, non-examining consultant, Dr. Jim Takach, completed a Physical RFC Assessment. (Tr. 330-337). Dr. Takach found that Plaintiff would be able to perform light work, except that his hearing was limited and he should avoid situations where good hearing was needed for safety or job performance. (Tr. 334).

Plaintiff was seen by Dr. Gaines on July 6, 2012, for a 3 month follow-up, complaining of pain and swelling on the right side of his face, a broken tooth, and leg cramps. (Tr. 386). Dr. Gaines assessed Plaintiff with diabetes mellitus type II, hypercholesterolemia, HTN, and a broken tooth. (Tr. 386). Plaintiff was thereafter seen by Haley Endacott, APN, at the Community Clinic, with a swollen left leg. (Tr. 579). Ms. Endacott assessed Plaintiff with cellulitis of his leg. (Tr. 579). On August 1, 2012, Plaintiff presented to the ER with complaints of leg pain. (Tr. 430). X-rays of his tibia and fibula revealed soft tissue swelling along the ventral aspect of the distal left tibia, but no acute bony abnormality was identified. (Tr. 428). Plaintiff was diagnosed with contusion, lower leg; anxiety; and unspecified essential hypertension. (Tr. 428). Plaintiff saw Dr. Gaines the next day, and was told to continue on antibiotics. (Tr. 384). On August 17, 2012, Plaintiff saw Dr. Gaines, complaining of his left leg being infected, and was diagnosed with cellulitis of leg. Dr. Gaines incised the abscess and gave Plaintiff an injection. (Tr. 382-383). Plaintiff developed a small hemotoma on the leg, and on August 20, 2012, Dr. Gaines assessed him

with a hematoma and contusion. (Tr. 380). Plaintiff was started on Hydrocodone-Acetaminophen, and was to continue on antibiotics. (Tr. 380). On August 29, 2012, Plaintiff saw Dr. Gaines, complaining that his left leg wound was draining and also that he had a rash all over his body. (Tr. 378). Plaintiff reported he was "cutting high grass," and thought that was where he came into contact with poison ivy. (Tr. 378).

On October 15, 2012, Plaintiff was seen at the Community Clinic by Jennifer Jennings, APN. (Tr. 373). Plaintiff complained of high blood pressure, and a tender spot on his left calf that had been present for over a month. (Tr. 373). He was assessed with HTN and hematoma and contusion. (Tr. 374). Plaintiff was assessed by Dr. Gaines on October 22, 2012, with diabetes mellitus, type II, hypercholesterolemia, overweight, rash, and vaccine for influenza. (Tr. 565).

On November 7, 2012, Sheri L. Simon, Ph.D., completed a Case Analysis and affirmed the mental assessment dated May 31, 2012. (Tr. 454). On November 12, 2012, Dr. James Wellons completed a Case Analysis and affirmed the assessment dated June 8, 2012. (Tr. 455).

Plaintiff was seen at the Community Clinic on December 3, 2012, about "worrying," and was assessed with anxiety disorder, nos. (Tr. 560). Dr. Gaines also saw Plaintiff on December 3, 2012, when Plaintiff complained of a headache, blurry vision, and watery eyes. (Tr. 563). Dr. Gaines diagnosed Plaintiff with trigeminal neuralgia,[1] diabetes mellitus type II, HTN, and overweight. (Tr. 5632).

On January 7, 2013, Plaintiff sought treatment from Jeffrey K. Moore, DC. (Tr. 457). Plaintiff complained of discomfort and or paresthesia in his right lower lumbar area, right

---

[1] Trigeminal neuralgia – Severe, paroxysmal bursts of pain in one of more branches of the trigeminal nerve; often induced by touching trigger points in or about the mouth. …Stedman's Medical Dictionary 1307 (28th ed. 2006).

lumbosacral area, right sacroiliac area, and right leg. (Tr. 457). Dr. Moore believed Plaintiff's prognosis was good, and Plaintiff reported feeling better after his treatment. (Tr. 456).

On January 11, 2013, Plaintiff complained to Dr. Gaines of headache, body ache, fever and cough, and it was reported that Plaintiff was not taking Metformin. (Tr. 559). Dr. Gaines assessed Plaintiff with strep sore throat. (Tr. 559). On January 21, 2013, Plaintiff complained to Dr. Gaines of bad headaches and a rash, and was assessed with rash, HTN, and obesity, nos. (Tr. 557). Plaintiff was to keep a log of his blood pressure and get back with Dr. Gaines. (Tr. 557).

Plaintiff saw Jennifer Jennings, APN, on March 19, 2013 complaining of pain in his heels. (Tr. 555). He was assessed with urinary frequency and pain in limb. (Tr. 554). On March 20, 2013, and April 24, 2013, Plaintiff saw Dr. Gaines, and reported that his back started hurting worse after doing some outdoor activity. (Tr. 462-463, 552).

## III.   Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible

to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3).  A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience.  See 20 C.F.R. §§ 404.1520.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC.  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §§ 404.1520.

**III.   Discussion:**

Plaintiff's counsel argues the following issues in this matter: 1) Whether the ALJ erred in finding Plaintiff could perform his past relevant work; 2) Whether the ALJ erred by not using the Medical Vocational Grids (Grids); 3) Whether the ALJ erred in determining Plaintiff's severe impairments; 4) Whether the ALJ erred by not following SSR 82-63; and 5) Whether it was error that the ALJ who wrote the decision was not the ALJ who heard Plaintiff's testimony at the hearing. (Doc. 18).

**A.  Severe Impairments:**

In his brief, when arguing that the ALJ failed to identify all of his severe impairments, Plaintiff merely states that "[a] mere review of the conditions set forth on T. 26 the last full paragraph lists numerous ailments the Plaintiff suffers from in addition his vision problems and headaches (T. 28) are more than mild limitations and thus should be defined as severe." (Doc. 18 at p. 13).  Plaintiff does not address any medical evidence to support his position or meaningfully argue this point in his brief, and the Court therefore finds Plaintiff has waived this argument. See Ahlberg v. Chrysler Corp., 481 F. 3d 630, 634 (8th Cir. 2007)("points not meaningfully argued in an opening brief are waived"); Rye v. Astrue, No. 07-1760, 2008 WL 3098667 (8th Cir. Aug. 7, 2008)(applying Ahlberg in a Social Security disability case); Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005)(rejecting out of hand conclusory assertion that the ALJ failed to consider whether the claimant met the listings because the claimant provided no analysis of relevant law or facts regarding the listings).

For the sake of argument, however, in his decision, the ALJ found that all other impairments other than those enumerated (diabetes mellitus and hypertension), alleged and

found in the record, were non-severe, "as they have been responsive to treatment and/or cause no more than minimally vocationally relevant limitations." (Tr. 24). The ALJ also correctly noted that the medical evidence of record did not indicate that Plaintiff was severely limited in any area. (Tr. 30). The Court notes that many of Plaintiff's alleged impairments existed as early as 2003, and Plaintiff was able to work successfully for many years. "'[A] condition that was not disabling during working years and has not worsened cannot be used to prove present disability.'" Martise v. Astrue, 641 F.3d 909, 924 (8th Cir. 2011)(quoting Naber v. Shalala, 22 F.3d 186, 189 (8th Cir. 1994). Certainly, with respect to Plaintiff's alleged mental impairment, holding jobs as a construction laborer and poultry worker for several years, even with possible cognitive disabilities, supports the ALJ's finding of non-disabled. Byes v. Astrue, 687 F.3d 913, 916 (8th Cir. 2012). See Talbert v. Colvin, 2014 WL 4660142 at *6 (W.D. Mo. Sept. 17, 2014)(Plaintiff suffered from some mental impairments as far back as high school but worked for many years after that).

Finally, where the ALJ finds at least one "severe" impairment and proceeds to assess claimant's RFC based on all alleged impairments, any error in failing to identify a particular impairment as "severe" at step two is harmless. Swartz v. Barnhart, 188 Fed. Appx. 361, 388 (6th Cir. 2006); Elmore v. Astrue, 2012 WL 1085487 at *12 (E.D. Mo. Mar. 5, 2012).

Based upon the foregoing, the Court finds the ALJ did not err in his severe impairment determination.

**B. Credibility Analysis:**

With respect to the ALJ's credibility analysis, the ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and

intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In his decision, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible for the reasons explained in his decision. (Tr. 27).  The ALJ noted that Plaintiff: was able to take care of most of his personal needs but was unable to tie his shoes and needed help pulling on pants or putting on shirts over his head; spent time with his family; and went to church and the grocery store weekly. (Tr. 27, 30).

It is also noteworthy that although Plaintiff reported in his Function Report – Adult, dated January 17, 2012, that he was unable to do any house or yard work, on August 29, 2012, Plaintiff reported to Dr. Gaines that he had a rash from "cutting high grass." (Tr. 378).  On April 24, 2013, Plaintiff complained to Dr. Gaines of having back pain after "doing some outdoor activity." (Tr. 462). In addition, although Plaintiff apparently used a cane at the hearing, and indicated in a report that it was prescribed by a physician, the Court has not found any medical record where a cane was prescribed.  Nor is there any medical evidence to support Plaintiff's need for a cane.

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's credibility analysis.

### C. RFC Determination:

As stated earlier, the ALJ determined that Plaintiff was able to perform the full range of light work. (Tr. 25). RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id. "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion and other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *15 (quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

In making his RFC determination, the ALJ discussed all of the relevant medical records, noting that Plaintiff's chest x-ray, cardiac markers, echo, and Cardiolite stress test were within normal limits. (Tr. 28). The ALJ discussed the fact that Plaintiff had eye surgery,

when Pterygium[2] was excised from his left eye in January of 2011, and that subsequent to said surgery, Plaintiff's vision was 20/40 in the right eye and 20/30 in the left eye; the fact that Plaintiff had mild hearing difficulty in the high frequencies for the left ear; the fact that Plaintiff may suffer from an undiagnosed sleep disorder; the fact that Plaintiff's hypertension, hyperglycemia, and hypokalemia symptoms were improved with treatment when he was in the hospital on February 27, 2012 (Tr. 29); the fact that in June of 2012, Plaintiff's blood sugars were better controlled, with a glucose level of 119; the fact that in October of 2012, Plaintiff's blood pressure was 110/72; and the fact that Plaintiff's complaints of discomfort in his right lower back and right leg were better after treatment by Dr. Moore. (Tr. 30).

The ALJ also carefully discussed the mental evaluation of Dr. Nichols, and gave it some weight, but found that Plaintiff was not as severely limited as indicated by Dr. Nichols. (Tr. 29). To support his conclusion, the ALJ pointed to the fact that Plaintiff had worked successfully for many years and supported and raised a family, which supported the finding that Plaintiff's mental impairments were non-severe. Although the Court notes that Plaintiff complained of bad vision in one of his eyes, the record from Dr. Henry after his eye surgery revealed Plaintiff's vision was 20/40 in the right eye and 20/30 in the left eye. (Tr. 28, 254). In addition, although Plaintiff suffered from a mild loss of hearing in his left ear, the Court notes that Plaintiff's past relevant work as a poultry deboner does not require near or far acuity, depth perception, or hearing. Dictionary of Occupational Titles (DOT) 525.687-066.

---

[2] Pterygium – 1. A triangular patch of hypertrophied bulbar subconjunctival tissue, extending from the medial angle or canthus of te eye to the border of the cornea or beyond, with apex pointing toward the pupil. 2. Forward growth of the cuticle over the nail plate, seen most commonly in lichen plants. 3. An abnormal skin web. Stedman's Medical Dictionary 1599 (28th ed. 2006).

Accordingly, the ALJ's failure to include any reference to vision or hearing in his RFC is harmless.

The ALJ gave the state agency opinions some weight to the extent they found Plaintiff capable of light work. (Tr. 30). He further found that Plaintiff's mental impairments were non-severe and that Plaintiff's diabetes and hypertension were relatively well controlled with medication. (Tr. 30). He concluded that all other physical and mental impairments alleged were "either adequately controlled with medication or are not severely limiting." (Tr. 30).

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's RFC determination.

### D.  Past Relevant Work:

Plaintiff argues that the ALJ failed to consider the VE's testimony regarding Plaintiff's age and declining health, and that the VE's testimony conflicts with the ALJ's finding that he can perform his past work as a poultry deboner. A VE may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, "either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. 404.1560(b)(2). In this case, the ALJ determined that Plaintiff's past work as a poultry deboner, DOT 525.687-066, was a light, unskilled job. (Tr. 45). A review of the job of poultry deboner reveals that Plaintiff's vision, hearing, or age are not involved in the position of poultry deboner as it is "generally performed in the national economy." Furthermore, 20 C.F.R. § 404.1560(b)(3) provides that if the Commissioner finds that a claimant has the RFC to do his past relevant work, he will determine that Plaintiff can still do his past work and is not disabled, and will not consider

vocational facts or age, education, and work experience or whether his past relevant work exists in significant numbers in the national economy.

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's finding that Plaintiff could perform his past relevant work.

### E.  Failure to use Grids:

Plaintiff argues that Defendant should have used the Grids, which would result in a determination of disability.  However, as noted by Defendant, the Grids are applicable only at the stage of the analysis at which claimant has satisfied his burden of demonstrating that his impairment prevents his performance of past relevant work, and the burden shifts to the Agency that the claimant retains the RFC to perform other work. See, e.g., Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Edwards v. Secretary of Health and Human Services, 809 F.2d 506, 507 (8th Cir. 1987).

Based upon the foregoing, the Court finds that Plaintiff failed to satisfy his burden of proving he could not perform his past relevant work, and that the ALJ did not err in failing to use the Grids.

### F.  S.S.R. 82-63:

Plaintiff argues that he met the "arduous labor rule" under S.S.R. 82-63. S.S.R. 82-63 gives clarification to the two medical-vocational profiles which show an inability to make a vocational adjustment to other work pursuant to 20 C.F.R. § 404.1562. See S.S.R. No. 82-63, 1982 WL 31390 (1982). The characteristics of these two medical-vocational profiles are: (1) marginal education and long work experience limited to arduous unskilled physical labor, and (2) advanced age, limited education and no work experience.

As Plaintiff has work experience in this case, to be considered disabled under 20 C.F.R. § 404.1562, a claimant must: 1) have only a marginal education; 2) have at least thirty-five years of work experience performing arduous, unskilled physical labor; and 3) be unable due to a severe impairment to return to such labor. 20 C.F.R. § 404.1562(a). In this case, in his Disability Report – Adult, Plaintiff indicated that he worked from 1994-1999 as a laborer at construction, and from 1999-2011 in production and packing in poultry processing. (Tr. 163). The Court notes that at the hearing, there is some reference to Plaintiff maybe having worked for 12 years at Tysons, doing a lot of the same kind of work as he did at Cargill. (Tr. 55).  Even taking such reference as fact, Plaintiff has still not proven that he has at least thirty-five years of work experience performing arduous unskilled physical labor. Accordingly, this provision does not apply.

**G.  Different ALJ:**

Plaintiff argues that HALLEX requires notice to be given to Plaintiff that a different ALJ would be deciding the case than the one before whom a hearing was held. Plaintiff cites to HALLEX I-2-8-40 in support of his position. This issue was discussed in White v. Social Security Administration, No. 4:10-cv-01422-BRW, 2011 WL 5439202 at *4-5 (E.D. Ark. Nov. 9, 2011), where United States District Judge Billy Roy Wilson referred to the case of Wilburn v. Astrue, 626 F.3d 999 (8th Cir. 2010), noting that the Eighth Circuit found that a review of the relevant SSA regulations did not provide for a notice requirement. Id. at *5. Judge Wilson continued:

> The Court also noted that "'[i]t is well settled that a change in personnel in an administrative agency or tribunal during the course of a hearing, or at any time before the issuance of a final order on the hearing, does not invalidate the order.'" Lastly, the Eighth Circuit found that the appellant was unable to show how the substitution prejudiced her.

Id. at *5 (footnotes omitted). As Judge Wilson found in White, while Plaintiff cites

HALLEX 1-2-8-40, nothing in the language provided by him supports his argument,

and the reassignment of the case to a different ALJ neither violated any regulations,

nor did it prejudice the Plaintiff.

Finally, even if a violation had occurred, the Eighth Circuit has not specifically ruled

on the effect of a violation of HALLEX. However, in Ellis v. Astrue, No. 4:07CV1031 AGF,

2008 WL 4449452 at *15-16 (E.D. Mo. Sept. 25, 2008), the Court addressed this issue:

> While the Eighth Circuit has not specifically ruled on the effect of a violation
> of HALLEX, other circuits have. The Ninth Circuit believes that HALLEX is
> an internal manual with no legal force. Moore v. Apfel, 216 F.3d 864, 868-69
> (9th Cir. 2000)("As HALLEX does not have the force and effect of law, it is
> not binding on the Commissioner and we will not review allegations of
> noncompliance with the manual.")(citing Schweiker v. Hansen, 450 U.S. 785,
> 789, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981)(per curiam)(holding that rules in
> claims promulgated for claims representatives do not bind the Social Security
> Administration)). The Fifth Circuit held in Newton v. Apfel, 209 F.3d 446 (5th
> Cir. 2000), that although HALLEX does not carry the authority of law,
> "'where the rights of individuals are affected, an agency must follow its own
> procedures, even where the internal procedures are more rigorous than
> otherwise would be required,'" and should prejudice result from a violation of
> an agency's internal rules, the result cannot stand. Id. at 459 (quoting Hall v.
> Schweiker, 660 F.3d 116, 119 (5th Cir. 1981)(footnote omitted).

Id.  As the Court found in Ellis, this Court believes that the Eighth Circuit would hold that

HALLEX does not have the force of law. Id. at *16.

Based upon the foregoing, the Court finds Plaintiff's argument on this issue to be

without merit.

## IV.    Conclusion:

Accordingly, the Court recommends affirming the ALJ's decision, and

dismissing Plaintiff's case with prejudice.  **The parties have fourteen days from**

**receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 1st day of April, 2016.

.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE  JUDGE

19